# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 07-2590

_____

Brian Hodak; Karla Hodak; H & N     *
Planning and Control, Inc.,          *
                                     *
          Plaintiffs - Appellees,    *
                                     *
     v.                              *
                                     *
City of St. Peters; Tom Brown,       *     Appeal from the United States
Mayor,                               *     District Court for the
                                     *     Eastern District of Missouri.
          Defendants - Appellants,   *
                                     *
Timothy Kaiser, Sgt., DSN 184; R     *
Treadway, Ofcr., DSN 253l; Charles   *
Carson, Ofcr., DSN 297,              *
                                     *
          Defendants.                *

_____

Submitted: February 13, 2008
Filed: July 30, 2008

_____

Before MELLOY, GRUENDER and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Brian Hodak ("Brian") and H/N Planning & Control, Inc. ("H/N") sued the City
of St. Peters, Missouri ("City"), and its former mayor, Tom Brown ("Brown"), under

42 U.S.C. § 1983 for allegedly increasing police presence around a bar owned by H/N and ultimately revoking its liquor license in retaliation for Brian, the husband of H/N's sole shareholder, exercising his First Amendment right to free speech. A jury found for Brian and H/N, awarding no damages to Brian and $375,000 in compensatory damages and $1,000,000 in punitive damages to H/N. The district court granted the City's and Brown's renewed motion for judgment as a matter of law with respect to Brian's claim but denied the motion with respect to H/N and entered judgment in favor of H/N. The City and Brown appeal, and we reverse.

## I.    BACKGROUND

We view the relevant background facts based upon the evidence presented at trial in a light favorable to the jury's verdict. *See Sellers v. Mineta*, 350 F.3d 706, 709 (8th Cir. 2003).

Karla Hodak ("Karla") was the president and sole shareholder of H/N, and her husband, Brian, was the corporation's comptroller. H/N opened C. Blake's Bar & Grill in St. Peters, Missouri, in April 1997. Karla and Brian were employees at C. Blake's. Karla held a liquor license issued by the City for H/N doing business as C. Blake's.

The City's Liquor Commission ("Commission") issues liquor licenses. It also has supervisory authority over licensees and their operations. The Commission determines whether to assess points against a liquor license for code violations, which could ultimately lead to the revocation of the license. The City's Board of Aldermen ("Board") has the authority to uphold or reject the assessment of points by the Commission. If a liquor license receives 6.5 points or more, the Commission may recommend to the Board that it revoke the liquor license. The Board then votes on whether or not to revoke the license. The Board consists of eight elected members.

The mayor formally sits on the Board but only casts a vote in the event of a tie. Brown served as the City's mayor until 2004.

Between November 11, 2000, and May 28, 2001, Brian wrote five letters to the editor that were published in a local newspaper and were critical of the actions of the City and, by implication, Brown. The letters criticized tax increment financing districts, storm-water drain costs, a judicial candidate, and high tax rates.

On October 18, 2001, a customer at C. Blake's who had been quarreling with patrons was "cut off" from ordering more drinks and threw a bottle against a mirror. Brian removed the customer from the bar. An employee called the police, and Brian held the customer down until police arrived. Brian scuffled with the police officers who responded to the call. On October 30, 2001, the Commission voted to assess 2.0 points against the liquor license for this incident. On January 10, 2002, the Board upheld the assessment.

Brown entered C. Blake's on November 1, 2001, and told Brian, "Well, Brian, there are people in this city who don't like what you've been saying, and you're an important businessman, and a lot of people listen to what you say, and we in St. Peters, we stick together. So if you don't keep your mouth shut, your wife's going to get her liquor license revoked." Brown made a similar statement to Karla, noting that "we in the City of St. Peters know how to stick together" and adding that Brian was "alienating us boys and it's going to cost you your license."

After this threat, Brian and Karla claimed that police presence around C. Blake's increased. According to their testimony, police drove through the parking lot more often and frequently peered in the windows of C. Blake's. They also claimed that this increased police presence caused a reduction in profits for H/N in November 2001 and for the next several months.

On November 3, 2001, an employee at C. Blake's called the police after a customer threw a bottle through a window. Police located the suspect in the passenger seat of a nearby vehicle and arrested the driver of the vehicle for driving while intoxicated. The Commission assessed an additional 3.5 points against the liquor license for this incident. On December 8, 2001, police responded to a call from another employee at C. Blake's regarding an assault. Witnesses to the assault included minors who had allegedly been served alcohol at the bar. The Commission assessed an additional 3.5 points against the license for serving minors.

Shortly thereafter, two more of Brian's letters were printed in the newspaper. On December 10, 2001, Brian's published letter criticized the local use tax. In a February 6, 2002 published letter, Brian criticized Brown for violating "due process" by denying a permit to a gas service station, which had resulted in a lawsuit against the City. In this letter, Brian concluded, "[I]f Tommy [Brown] thinks he can subvert due process relative to BP Amoco, who's next?" He signed his name along with "C. Blake's Bar and Grill." On February 7, 2002, Brown called Karla and said, "Tell your fucking husband to shut up or you're going to lose your fucking liquor license."

On March 7, 2002, C. Blake's remained open approximately five minutes past the mandatory closing time. The Commission assessed 3.5 points against the liquor license. On May 7, 2002, the Commission recommended revoking Karla's liquor license for H/N, doing business as C. Blake's, because it had accumulated 12.5 points, well above the 6.5 point threshold. A revocation hearing before the Board was set for June 13, 2002. On that day, H/N sold the assets of C. Blake's to Mid Rivers Management, Inc. That evening, Brian appeared before the Board in order to defend the liquor license. Prior to the hearing, Brown instructed an alderwoman to make the motion to revoke the liquor license. At the conclusion of the hearing, the Board upheld the points assessed and voted 6-0 in favor of revocation, with two Board members absent. After the revocation, the unusual police presence around C. Blake's allegedly stopped.

Brian and Karla brought suit under § 1983 against the City, Brown and three city police officers. They alleged that the City and Brown increased police presence around C. Blake's and ultimately revoked Karla's liquor license in retaliation for Brian's critical letters to the editor, which violated Brian's First Amendment right to free speech. They also alleged that the City and Brown violated their procedural due process rights under the Fourteenth Amendment by failing to give them a fair hearing before revoking the liquor license. Finally, they asserted four claims against three police officers alleging police misconduct during the October 18, 2001 incident at C. Blake's. The district court granted the defendants' motion for summary judgment on the procedural due process claim because the Hodaks failed to exhaust state remedies and on two of the police misconduct claims because the officers' actions were reasonable.

On March 6, 2006, a jury trial commenced on the First Amendment retaliation claim and the two remaining police misconduct claims. At the close of evidence, the City and Brown moved for judgment as a matter of law on the retaliation claim, arguing that the Hodaks' damages evidence was based solely on lost profits of H/N, which was not a party to the lawsuit. In response, the Hodaks moved to substitute H/N for themselves. The district court granted the motion and substituted H/N for the Hodaks on the retaliation claim before submitting the case to the jury. The jury then found for H/N on the retaliation claim and found for the police officers on the two misconduct claims. After the jury verdict in H/N's favor, the district court granted the City's and Brown's motion for a new trial because it concluded that they had been prejudiced by the late substitution of H/N as the plaintiff.

Prior to the retrial, a third amended complaint was filed in which both Brian and H/N, but not Karla, asserted only the First Amendment retaliation claim. The City and Brown moved for judgment on the pleadings against H/N, contending that H/N lacked standing to bring a claim for Brian's First Amendment activity. The district court rejected this argument and concluded that H/N had standing to assert a claim based

on a violation of Brian's rights. Pursuant to the three-part analysis set forth in *Powers v. Ohio*, 499 U.S. 400, 411 (1991), the district court concluded that H/N suffered an injury in fact, that H/N had a close relation to Brian, and that Brian was hindered in protecting his own interests. The district court reasoned that Brian was "hindered" from protecting his own interests because of "the lack of economic injury to himself," which "prevent[ed] Plaintiff Brian Hodak from protecting his own first amendment rights." *Hodak v. City of St. Peters*, 2006 WL 3004052, at \*6 (E.D. Mo. Oct. 20, 2006). Therefore, the district court reasoned, even though H/N did not engage in First Amendment activity, it had standing to assert a claim based on Brian's First Amendment rights.

At the second trial, the jury found that the City and Brown improperly retaliated against Brian and H/N based on Brian's exercise of his First Amendment right to free speech. The jury did not award Brian any damages, but it awarded H/N $375,000 in compensatory damages and $1,000,000 in punitive damages. Brian requested, for the first time, that the district court award him nominal damages, and the district court refused. In a post-trial motion, the City and Brown renewed their motion for judgment as a matter of law. The City and Brown argued that Brian suffered "no adverse action sufficient to quell Brian Hodak's speech." The district court granted the City's and Brown's motion with respect to Brian, reasoning that Brian's "testimony regarding the emotional impact [to Brian] of the threats of Defendant Brown, and the eventual revocation of Karla Hodak's liquor license are not sufficiently severe so as to raise to the level of an actionable constitutional violation." *H/N Planning & Control, Inc. v. City of St. Peters*, --- F. Supp. 2d ---, 2007 WL 1445121, at \*11 (E.D. Mo. May 14, 2007). Because Brian did not suffer an "actionable constitutional violation," the district court concluded that the City and Brown were entitled to judgment as a matter of law with respect to Brian's claim. Brian did not appeal the district court's decision, and H/N has not challenged that judgment on appeal.

In their renewed motion for judgment as a matter of law, the City and Brown also argued that H/N, which conceded it did not engage in protected speech under the First Amendment, lacked standing to assert a claim based on Brian's First Amendment rights. The district court rejected this argument again, citing its earlier analysis of the issue. Regarding the third prong of the standing analysis, the district court concluded that Brian was "hindered" because he "cannot protect this interest, as he suffered no damages." *Id.*

The district court rejected the remainder of the City's and Brown's arguments and sustained the jury's verdict and damage awards in favor of H/N. The district court also awarded H/N attorney's fees under 42 U.S.C. § 1988. The City and Brown appeal the judgment against them and in favor of H/N.

## II.    DISCUSSION

The City and Brown argue that the district court should have dismissed H/N's claim, which was based solely on Brian's First Amendment activity, for lack of standing. "Standing is a threshold inquiry and jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *Medalie v. Bayer Corp.*, 510 F.3d 828, 829 (8th Cir. 2007) (internal quotations omitted).

"We review the district court's conclusion that the plaintiff[] had standing de novo." *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006) (italics omitted). In order to have standing, a party must have a "case or controversy" under Article III of the Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum of standing" consists of three elements. *Id.* at 560. First, a party must have suffered an "injury in fact," an actual or imminent concrete and particularized invasion to a legally protected interest; second, the injury must be fairly traceable to the challenged action of the defendant; and third, the injury must be redressable by a favorable decision. *Id.*

"Even if a plaintiff meets the minimal constitutional requirements for standing, there are prudential limits on a court's exercise of jurisdiction." *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1378 (8th Cir. 1997). As a general rule, a plaintiff may only assert his own injury in fact and "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). H/N concedes that it did not engage in any speech protected under the First Amendment, but it claims that it has "third-party standing" to assert Brian's First Amendment rights.[1] Third-party standing is an exception to the general rule that a plaintiff may only assert his own injury in fact and permits a litigant who lacks a legal claim to assert the rights of a third party. *See Ben Oehrleins*, 115 F.3d at 1381; *see also* 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.9, at 542–43 (2d ed. 1984).[2]

The parties urge us to apply the three-part analysis in *Powers*, as the district court did, to determine whether H/N has third-party standing. In *Powers*, a juror in a criminal trial was discriminated against on the basis of race in violation of the Fourteenth Amendment. 499 U.S. at 412. The Supreme Court allowed the criminal defendant to assert the rights of this third party under a three-part analysis. The Court concluded that the criminal defendant suffered an injury in fact, that he had a close relation to the juror, and that the juror was hindered in his ability to protect his own interests. *Id.* at 411.

---

[1]Even though Brian signed his final letter with his name and "C. Blake's Bar and Grill," H/N does not argue that the City and Brown retaliated against it as if it were the speaker.

[2]When analyzing third-party standing, the "third party" is the party whose rights are at issue. In this case, H/N is the litigant, the City and Brown are the defendants, and Brian is the "third party." H/N seeks to assert "third-party standing," standing to assert the rights of Brian.

The test for "hindrance" is a question of "the likelihood and ability of the third parties . . . to assert their own rights." *Id.* at 414. "[A] party must show that some barrier or practical obstacle (e.g., third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters the third party from asserting his or her own interest." *Benjamin v. Aroostook Medical Ctr., Inc.*, 57 F.3d 101, 106 (1st Cir. 1995) (italics omitted). In *Powers*, the "barriers to a suit" that constituted a hindrance included "practical barriers," such as the "small financial stake involved and the economic burdens of litigation." 499 U.S. at 414–15.

No practical barriers exist if the third party actually asserts his own rights. In *Ben Oehrleins*, for instance, a local ordinance required waste to be deposited in designated facilities. Waste haulers brought suit to strike down the ordinance on the basis that it violated the Commerce Clause. "Waste generators," customers of waste haulers, also sued, asserting third-party standing to bring the Commerce Clause claims of the waste haulers. We concluded that "there is no indication that allowing standing to the generators 'is necessary to insure protection of the rights asserted.'" *Ben Oehrleins*, 115 F.3d at 1381 (quoting *Warth*, 422 U.S. at 510). "That the hauler plaintiffs brought suit more than a year before the generator plaintiffs (and indeed share the same counsel) and have aggressively litigated their own claims demonstrates that they are fully capable of asserting their own rights." *Id.* Because the haulers asserted their own claims, the generators could not establish that the haulers were hindered in asserting their rights, and we denied the litigants third-party standing. *Id.*

Other circuits agree that if a third party actually asserts his own rights, no hindrance exists, and third-party standing is improper. *See Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 145 (3d Cir. 2008) ("Here, however, the [third party] is not only willing to sue on its own behalf—it *has* sued."); *Benjamin*, 57 F.3d at 106 ("Here, the injured party is clearly identified and has sufficient interest in the litigation . . . to pursue (and, in fact, has pursued) the action."); *Wedges/Ledges of Calif., Inc. v. City of Phoenix*, 24 F.3d 56,

62 (9th Cir. 1994) ("[T]he very participation of the [third party] in this suit demonstrates that there is no hindrance to [their] ability to protect their own interests."); *Knight v. Alabama*, 14 F.3d 1534, 1554 (11th Cir. 1994) ("[N]ot only was there no obstacle to [the third parties] asserting their rights for themselves, but, in fact, they were already doing so.").

Assuming that H/N suffered an injury in fact and that it had a close relation to Brian, we conclude that H/N cannot establish that Brian was hindered from protecting his own interests. Brian had no practical obstacles that prevented him from bringing his First Amendment claim. In fact, he brought his own claim before the district court, and his participation in the lawsuit demonstrates that he was not hindered from asserting his own rights. *See Ben Oehrleins*, 115 F.3d at 1382. Although the district court ultimately concluded that Brian lacked direct economic injury, it obviously did not prevent Brian from asserting his own rights in the original § 1983 action. He voluntarily withdrew himself as a named plaintiff in the first trial, but prior to the second trial, in the third amended complaint, Brian asserted his First Amendment retaliation claim yet again. He persisted in the claim throughout the second trial, and the jury found in his favor but awarded no damages.

Brian might have believed that he could establish economic damages before filing the lawsuit, or he might have believed that nominal damages and an award of attorney's fees would be sufficient incentive to assert his own rights. *See Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 802 (8th Cir. 2006) (acknowledging that a plaintiff may receive nominal damages and attorney's fees for a First Amendment violation). Regardless, at the outset of litigation, Brian chose to assert his own rights, and no practical obstacles hindered him from doing so. The district court did not reject Brian's claim until it concluded that he did not suffer an actionable constitutional violation and granted the defendants' post-trial motion for judgment as a matter of law. Under these circumstances, we conclude that Brian was

likely and able to assert his own rights and was not hindered in doing so. Therefore, the district court erred in extending third-party standing to H/N.[3]

Even if we were to conclude that Brian was hindered in asserting his rights, we would conclude that H/N lacks standing nonetheless. The Supreme Court has required that a litigant must actually assert the rights of the third party, supported by allegations in the record, in order for a litigant to have third-party standing. *McGowan v. Maryland*, 366 U.S. 420, 429 (1961). In *McGowan*, the plaintiffs were employees of a department store who had been convicted for violating Sunday "blue laws." They attempted to challenge the blue laws as violating the Free Exercise Clause of the First Amendment, but they failed to allege "any infringement of their own religious freedoms." *Id.* They then sought to establish third-party standing based on the First Amendment rights of their customers, but the record lacked any allegation "that the statutes infringe upon the religious beliefs of the department store's present or prospective patrons." *Id.* The record did not contain allegations sufficient to assert the rights of the third party, and the Supreme Court held that the employees did not have third-party standing to bring a claim based on the rights of the customers. *Id.* Therefore, if a litigant wholly fails to assert the rights of the third party, the litigant lacks third-party standing.

We would find no difficulty in extending that principle to this case on appeal, in which the district court has concluded that the third party, Brian, does not have any rights at stake because it determined that there was no actionable constitutional

---

[3]The district court relied upon *Camacho v. Brandon*, 317 F.3d 153 (2d Cir. 2003), in its third-party standing analysis. This Second Circuit case concluded that the third party was "hindered" from seeking redress because of "the absence of any direct economic harm to him," which permitted the litigant to assert the third party's First Amendment retaliation claim. *Id.* at 160. In *Camacho*, however, the third party never filed suit and was "inhibited from seeking redress for these injuries," unlike this case, in which Brian did assert his own rights and sought redress. *See id.*

violation. Brian has not appealed the district court's judgment against him, and H/N makes no argument on appeal that Brian has any rights he could assert.[4] In fact, H/N insisted at oral argument that it was "not necessarily" the case that Brian must have an actionable constitutional violation in order for H/N to establish third-party standing. Brian has no rights that H/N may assert, and we would decline to extend third-party standing to H/N to assert Brian's nonexistent legal claim.

Because H/N does not have third-party standing, the City and Brown are entitled to judgment as a matter of law. The district court awarded H/N, as the prevailing party, attorney's fees under 42 U.S.C. § 1988. Because we reverse the verdict, H/N is no longer the prevailing party, and, therefore, we vacate the district court's attorney's fees award. *See Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 703 (8th Cir. 2004).

## III.   CONCLUSION

For the reasons stated above, we reverse and remand the case to the district court with instructions to vacate the judgment in favor of H/N and dismiss H/N's complaint for lack of jurisdiction.

_____

_____

[4]Brian might have been able to establish a constitutional violation in different ways. For example, he could have shown that a person of ordinary firmness would have been chilled from engaging in speech. *See Naucke v. City of Park Hills*, 284 F.3d 923, 927–28 (8th Cir. 2002). He could have shown a reasonable apprehension that his wife might be economically disadvantaged in retaliation for his speech. *See Int'l Ass'n of Firefighters v. City of Ferguson*, 283 F.3d 969, 973 (8th Cir. 2002). He also could have shown that the alleged retaliation carried out against his wife resulted in an "actual or potential inhibitory effect" on his speech. *See Thompson v. Adams*, 268 F.3d 609, 614 (8th Cir. 2002). Nevertheless, Karla was not a party in the second trial, Brian does not appeal the district court's adverse judgment, and H/N does not raise these issues on appeal. Therefore, we do not reach these issues.