**FARMERS STATE BANK, Plaintiff,**

v.

**Tom GRONSTAL, in his Official Capacity as Superintendent of the Iowa Division of Banking and Administrator of Electronic Transfer of Funds, Iowa Division of Banking, Defendant.**

**No. 4:08–cv–00299–JEG.**

United States District Court,
S.D. Iowa,
Central Division.

Feb. 25, 2009.

Judy D. Johnson, Steven P. Wandro, Kimberley K. Baer, Wandro & Baer PC, Des Moines, IA, for Plaintiff.

Jeffrey C. Peterzalek, AAG, Jessica Jean Whitney, Attorney General of Iowa, Robert Hugh Meyers, Iowa Attorney General, Des Moines, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss. The Court held a hearing on the Motion on December 22, 2008. Robert Meyers, Jeffrey Peterzalek, and Jessica Whitney represented the Defendant; Kimberley Baer and Judy Johnson represented the Plaintiff. The matter is now fully submitted and ready for disposition.

## I. BACKGROUND

For purposes of the current matter, the underlying facts are undisputed in any material way. Iowa Code Chapter 527, also known as the Electronic Funds Transfer Act (the Iowa EFTA), establishes a regulatory framework for automatic teller machine (ATM) systems (referred to in the statute as "satellite terminals"). *See* Iowa Code § 527. ATMs work by sending the information on an ATM card to the bank issuing the card. By communicating with the cardholder's bank, the ATM can determine whether to authorize or deny the cardholder's requested transaction. The connection between the ATM and the bank is accomplished by means of a network similar to the Internet. The Iowa EFTA sets forth two entities that can provide and operate the network—data processing centers (DPCs) and central routing units (CRUs)—and requires all ATMs in Iowa to be directly connected to either a DPC or a CRU. *See id.* § 527.5(8).

While similar, there are important distinctions between DPCs and CRUs and the types of transactions that they can handle. There are two basic types of transactions, referred to informally as "on-us" and "not-us." An on-us transaction occurs when a cardholder uses an ATM belonging to the bank named on the card, whereas a not-us transaction occurs when a cardholder uses an ATM not belonging to the bank named on the card.

DPCs can authorize both on-us and not-us transactions if the DPC to which the ATM is connected has access to the balance account files (BAF) of the cardholder's bank. When an ATM sends a transaction to a DPC that cannot authorize the transaction (because it does not have access to the BAF of the cardholder's bank), the DPC must forward the request to a CRU for authorization. If an ATM is not connected to a DPC, it can alternatively be connected directly to a CRU, which can authorize any transaction.

The Iowa EFTA requires nondiscriminatory and interoperable consumer access to ATMs within the state of Iowa. Nondiscriminatory consumer access is obtained by requiring all CRUs to maintain a direct connection to all DPCs that are directly connected to Iowa ATMs. *See id.* § 527.9(2)(f). Interoperable consumer access is achieved by requiring CRUs to be able to receive and route all transmissions from ATMs anywhere in Iowa. *See id.* § 527.9(2)(e).

The Iowa EFTA also requires that CRUs wishing to operate in Iowa must obtain the Iowa EFTA administrator's approval. *See id.* § 527.9. Among the requirements for approval, arguably discouraging to national banking entities, is that the entity owning the CRU must allow Iowa banking officials to appoint a minimum of four public members to the entity's board governing the CRU. *See id.* § 527.9(5)(a). The public board members must be given full voting and participation rights; and their terms of office, compensation, and rate of reimbursement are determined by the aforementioned Iowa banking officials. *See id.* §§ 527.9(5)(b), (c). Since the enactment of the Iowa EFTA, only one CRU has been approved in Iowa, and it is operated by an Iowa company.

Plaintiff Farmers State Bank (FSB) is a state-chartered bank regulated by the Iowa Division of Banking, with its main office located in Marion, Iowa. Elan is a subdivision of nationally chartered U.S. Bank, which is headquartered in Minneapolis, Minnesota. FSB currently has a contract for Elan to provide FSB with DPC services for its ATMs. However, because Elan is not an approved CRU provider in Iowa, FSB is limited to contracting with Elan for on-us ATM services and

is unable to receive Elan's services in conjunction with not-us transactions. FSB claims the Iowa EFTA's CRU approval process unfairly discriminates against national banks such as Elan by erecting barriers that dissuade them from providing CRU services in Iowa.

FSB further alleges that the national banks' inability to provide CRU services has resulted in a de facto monopoly as there is currently only one approved CRU provider in Iowa. FSB asserts that the Iowa EFTA, while facially neutral, places a burden on interstate commerce by discouraging other CRU providers, both in-state and out-of-state, from operating in Iowa due to the broad scope and exacting requirements of Iowa's CRU approval process. FSB argues that but for these restrictions it would be able to use Elan as its CRU provider and thereby reduce its overall operating costs by approximately twenty-five percent.

FSB's first claim is a challenge to the Iowa EFTA CRU approval laws under the dormant Commerce Clause, U.S. Const. art. I., § 8. FSB argues that the Iowa EFTA discriminates against interstate commerce by creating an unreasonable burden on companies seeking to operate CRUs in Iowa. FSB's second claim is that because of the Supremacy Clause, U.S. Const. art. IV, the federal National Bank Act, 12 U.S.C. §§ 21–216d, preempts the Iowa EFTA. FSB seeks both a declaration that the Iowa EFTA is unconstitutional and an injunction against Defendant Tom Gronstal, Superintendent of the Iowa Division of Banking and Administrator of the Iowa EFTA, prohibiting enforcement of the Iowa EFTA. The Superintendent moves to dismiss FSB's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

## II. DISCUSSION

The Superintendent argues that this case must be dismissed because (1) FSB has neither asserted an injury in fact nor shown that any such injury is caused by the actions of the Superintendent, and (2) FSB could only proceed through third-party standing, which cannot be sustained. It is axiomatic that a federal court must be satisfied of its jurisdiction before taking any further action. *See, e.g., Ashley v. U.S. Dep't of Interior,* 408 F.3d 997, 1000 (8th Cir.2005).

### A. Standing

■■■ Rule 12(b)(1) provides that a party may move to dismiss a complaint for lack of subject matter jurisdiction. A court lacks subject matter jurisdiction over a claim if the plaintiff lacks standing. *See Faibisch v. Univ. of Minn.,* 304 F.3d 797, 801 (8th Cir.2002). As the party urging the Court to exercise jurisdiction, FSB bears the burden of proving by a preponderance of the evidence that it has standing. *Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc.,* 424 F.3d 840, 843 (8th Cir.2005) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

■■ In order to have standing, Article III of the Constitution requires that a party must present the court with a "case or controversy." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. At an "irreducible constitutional minimum," a party seeking to prove standing must show the existence of three elements. *Id.* "First, a party must have suffered an 'injury in fact,' an actual or imminent concrete and particularized invasion to a legally protected interest; second, the injury must be fairly traceable to the challenged action of the defendant; and third, the injury must be redressable by a favorable decision." *Hodak v. City of St. Peters,* 535 F.3d 899, 903 (8th Cir.2008)

(quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130).

■ The Superintendent first argues that FSB cannot show that it has suffered an injury in fact. FSB claims that its operating costs are twenty-five percent higher because the CRU approval requirements create a barrier preventing FSB from contracting other providers for CRU services. While it is an indirect economic injury, it nevertheless is a concrete, particularized, and actual burden sufficient to constitute an injury in fact. *See Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1379 (8th Cir.1997) (finding that the "indirect economic injury" suffered by consumers of waste-removal service from being charged higher fees as a result of new fines placed on providers of waste-removal services constituted an injury in fact).

■ The Superintendent next argues that FSB cannot show that its injury is fairly traceable to the CRU approval requirements of the Iowa EFTA. The Superintendent asserts that the real cause of FSB's injury is Elan's failure to apply to become an approved CRU provider. However, FSB alleges that its harm comes from the statute itself, which dissuades CRU providers from entering the market. Even assuming the change in the statute sought by FSB, obtaining the relief FSB seeks would still require independent action by Elan or other CRU providers. Thus, there is an inherent tension in making this determination. However, on a record that indicates the current statutory structure has resulted in a single Iowa-based entity seeking approval of a CRU, for the purposes of the pending motion, the Court accepts the factual allegations in the Complaint and finds that FSB's injury in fact is fairly traceable to the CRU approval requirements of the Iowa EFTA such that a favorable ruling from this Court would remedy FSB's injury. There-

fore, FSB has satisfied the "irreducible constitutional minimum" standing requirements of Article III.

## B. Third–Party Standing

■ "Even if a plaintiff meets the minimal constitutional requirements for standing, there are prudential limits on a court's exercise of jurisdiction." *Hodak*, 535 F.3d at 903–04 (quoting *Ben Oehrleins*, 115 F.3d at 1378). One prudential limit is the "third-party standing" rule that, barring "exceptional circumstances," a party can only assert its own rights and not the rights of another. *Ben Oehrleins*, 115 F.3d at 1378–79 (noting that the third-party standing rule "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury themselves") (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99, 509, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

■ In order to show exceptional circumstances, a party seeking third-party standing must make two additional showings: (1) "whether the party asserting the right has a 'close' relationship with the person who possesses the right"; and (2) "whether there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129–30, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (quoting *Powers v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). As an initial matter, the Court concludes FSB must rely on obtaining third-party standing to seek each of its claimed causes of action.

■ Addressing the simplest issue first, the National Bank Act preempts state banking laws insofar as they apply to "national banking association[s]." *See* 12 U.S.C. § 24. Since FSB is a state-chartered bank, it is governed and protected by state law. No record has been made herein to support the finding of a collision

between the requirements to which FSB is subject under state law and the provisions of the National Bank Act. FSB must obtain third-party standing to assert a claim of preemption that might be asserted by Elan.

■ FSB also needs third-party standing to maintain its claim under the dormant Commerce Clause. FSB cites *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir.2003), for the proposition that FSB may challenge the Iowa EFTA directly under the dormant Commerce Clause; however, FSB has not alleged a direct challenge. The challenged portion of the Iowa EFTA regulates who may provide CRU services in Iowa. *See* Iowa Code § 527. Were FSB a CRU provider or desired to become one, FSB would be directly regulated by the statute and could bring a direct challenge to the statute without the need to implicate third-party standing. *See Ben Oehrleins*, 115 F.3d at 1380–81 (summarizing Supreme Court precedent where plaintiffs who were allowed to bring dormant Commerce Clause actions were "directly subject to discrimination").

Such allegations of direct discrimination are absent here. Instead, FSB alleges that it is subject to increased costs because the Iowa EFTA prevents *Elan* from becoming an Iowa CRU provider. Thus, instead of making a claim that it is directly regulated by the CRU approval process, similar to the plaintiffs in *South Dakota Farm Bureau*, FSB is claiming that it pays the end-line costs of Iowa's economic regulation, the same class of injury suffered by the plaintiffs in *Ben Oehrleins & Sons & Daughter v. Hennepin County*, 115 F.3d at 1381 (describing the plaintiff's injury as an "indirect economic injury"). While FSB's injury is sufficient to constitute an injury in fact satisfying the minimal Article III standing requirements, it is a derivative injury stemming from Elan's injury of being unable to enter the Iowa CRU provider market without being subject to allegedly burdensome regulation. In such situations, the recipient of the derivative injury must obtain third-party standing to assert the rights of the directly injured party.

This point is further illustrated by drawing analogies to *Warth v. Seldin*, 422 U.S. at 508, 95 S.Ct. 2197, and *Ben Oehrleins*, 115 F.3d at 1378–81, where the plaintiffs suffered injuries similar to FSB. In *Warth*, city zoning ordinances allegedly barred private development of low-income housing. City residents brought suit alleging that they suffered "economic injury consequent to [the city's] allegedly discriminatory and exclusionary zoning practices." *Id.* Referring to the third-party standing doctrine, the Court held that the residents' claims fell "squarely within the prudential standing rule that normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* at 509, 95 S.Ct. 2197.

In *Ben Oehrleins*, a county waste-disposal ordinance created higher fees for waste disposal. Both the waste haulers and their customers, waste generators, brought suit challenging the ordinance under the dormant Commerce Clause. *Ben Oehrleins*, 115 F.3d at 1379. The Eighth Circuit found that the waste-hauler plaintiffs had standing to sue in their own right because their injury was the direct result of the County's regulation. *Id.* The waste-generator plaintiffs, however, alleged that they themselves were "forced to pay higher fees for waste collection because [waste] haulers have passed on to them [the] higher fees." *Id.* Because the waste-generator plaintiffs were seeking relief from the "passed-on costs," their injury was the indirect "economic consequence of the County's restriction." *Id.* at 1381. Conse-

quently, the court found that the waste-generator plaintiffs could not claim any "personal right under the Commerce Clause to lower garbage bills"; rather, "[a]ny relief due the [waste] generator plaintiffs turn[ed] on the rights of the haulers to be free of the [ordinance's] requirements." *Id.* A like resolution obtains here.

FSB is suffering the "economic consequence" of the Iowa EFTA's restrictions on CRU providers. Because of other banks' unwillingness to submit to the CRU approval process, FSB has fewer choices of CRU providers and, consequently, increased costs and higher overhead. However, any relief for FSB turns on the dormant Commerce Clause rights of out-of-state and federal banks to be free from the Iowa EFTA's requirements. It follows, as in *Warth* and *Ben Oehrleins,* that FSB has no personal right under the dormant Commerce Clause but is seeking to assert the rights of third-party banks and thus must obtain third-party standing to assert its claims under the dormant Commerce Clause.

 Here, the Superintendent argues that the Court should not allow FSB third-party standing because no exceptional circumstances are present. Specifically, the Superintendent argues that FSB does not possess a "close relationship" with Elan that warrants allowing FSB to assert Elan's rights. FSB argues that its status as Elan's customer is a sufficiently "close" relationship to constitute exceptional circumstances. This argument fails. In *Ben Oehrleins,* the Eighth Circuit held that a similar customer relationship—the waste generators' status as purchasers of waste disposal services—did not constitute a special relationship that warranted allowing the generators to assert the rights of the haulers. *See Ben Oehrleins,* 115 F.3d at 1381. FSB's status as Elan's customer is insufficient to meet the prudential requirement that a party seeking third-party standing have a "close" relationship with the possessor of the right. There is no claim or record of another "close relationship." [1]

 FSB also fails to meet the second half of the exceptional circumstances test. "A party must show that some barrier or practical obstacle (e.g., third party is unidentifiable, lacks sufficient interest, or will suffer some sanction) prevents or deters" the possessor of the right from asserting its own interest. *Hodak,* 535 F.3d at 904. Though some "practical barrier" may very well exist in this case, such as the "small financial stake involved and the economic burdens of litigation," *Powers,* 499 U.S. at 414–15, 111 S.Ct. 1364, FSB has not made any such allegations. The third-party, Elan, is identifiable; and, the record is silent regarding Elan's interest or any looming sanction. Consequently, FSB fails on both prongs of the exceptional circumstances test and cannot obtain third-party standing.

Because FSB lacks its own or third-party standing to assert its claims, this Court lacks subject matter jurisdiction. Since it must dismiss FSB's Complaint for lack of subject matter jurisdiction, the Court is powerless to consider the Superintendent's additional Rule 12(b)(6) motion to dismiss for failure to state a claim.

---

1. While finding the relationship between a service supplier and its customer fails to establish a "close relationship" for purposes of third-party standing, it is useful to also consider what such a relationship would require. "[T]he relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Powers,* 499 U.S. at 413, 111 S.Ct. 1364 (quoting *Singleton v. Wulff,* 428 U.S. 106, 115, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). Nothing in the record or allegations before this Court would support such determination.

## III. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (Clerk's No. 4) must be **granted** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**